UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/14

------------------------------------------------------ X

In re

BGI, INC., f/k/a Borders Group, Inc.,

               Debtor.

------------------------------------------------------

ERIC BEEMAN, JANE FREIJ, AND
ROBERT TRAKTMAN,

               Appellants,

      - against -

BGI CREDITORS' LIQUIDATING
TRUST AND CURTIS R. SMITH, in his
capacity as the Liquidating Trustee,

               Appellees.

------------------------------------------------------ X

Chapter 11
Bankruptcy Case No. 11-10614
Substantively Consolidated

<u>OPINION AND ORDER</u>

13 Civ. 5754 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

      This dispute arises from the chapter 11 bankruptcy cases of Borders

Group, Inc. and certain of its affiliates ("Borders").[1] Eric Beeman, Jane Freij, and

Robert Traktman ("Appellants"), holders of unused Borders gift cards, appeal from

---

[1]      The debtors' cases have been substantively consolidated. The BGI
Creditors' Liquidating Trust (the "Trust") is the successor in interest to Borders
under the confirmed chapter 11 plan (the "Plan"). The "Appellees" are the Trust
and its trustee, Curtis R. Smith (the "Trustee").

1

an order of bankruptcy judge Martin Glenn permitting a second interim distribution under the Plan (the "Second Distribution Order").[2]  Appellants ask this Court to (1) certify a direct appeal to the Court of Appeals pursuant to section 158(d)(2) of title 28 of the United States Code ("section 158(d)(2)") and (2) stay interim distributions pending disposition of their appeals.[3]  For the reasons set forth below, their motion is denied.

## II.  BACKGROUND

When Borders and its affiliates filed their chapter 11 bankruptcy petitions on February 16, 2011, they intended to reorganize through a sale of their business as a going concern to a third party.[4]  To that end, they sought and

---

[2]     The aggregate unused balance on Appellants' gift cards is $225.  *See* Appellees' Memorandum of Law in Opposition to (I) Certification of Direct Appeal Pursuant to 28 U.S.C. § 158(d) and (II) Appellants' Request for a Stay of Interim Distributions Pending Appeal ("Appellees' Mem."), at 15 n.12.  However, Appellants seek to represent a class of gift card holders.  Appellants indicate that there are millions of outstanding gift cards with potential claims of over $150 million.  *See* Gift Card Claimants-Appellants' Memorandum in Support of Certification Under 28 U.S.C. § 158(d)(2)(A) for Direct Appeal to Court of Appeals and Stay of Interim Distributions Pending Resolution ("Appellants' Mem."), at 2.

[3]     Appellants have three appeals pending in the Second Circuit from District Court Judge Andrew L. Carter, Jr.'s dismissal of their appeals as equitably moot on May 22, 2013.  *See In re BGI, Inc.*, Nos. 12 Civ. 7714, 12 Civ. 7715, 13 Civ. 0080, 2013 U.S. Dist. LEXIS 77740 (S.D.N.Y.) ("*BGI, Inc. III*").

[4]     *See* Appellants' Mem. at 5-6.

received authorization from Judge Glenn to continue customer programs, such as gift cards.[5]  As of June 2011, Borders' "books and records indicated the existence of approximately 17.7 million outstanding gift cards with unredeemed balances aggregating approximately $210.5 million."[6]

On April 8, 2011, Judge Glenn entered an order establishing June 1, 2011 as the last date for prepetition creditors to file proofs of claim (the "Bar Date Order").[7]  The Bar Date Order required notice by mail to all known creditors and notice by publication to all unknown creditors.[8]  No appeal was taken from the Bar Date Order.  Neither Appellants, nor any other holder of a gift card, filed a timely proof of claim.[9]

The proposed sale of Borders' business as a going concern was

---

[5]     *See id.*

[6]     *In re BGI, Inc., f/k/a Borders Group Inc.*, 476 B.R. 812, 825 (Bankr. S.D.N.Y. 2012) ("*BGI, Inc. I*") (quotation marks omitted).

[7]     *See* Appellants' Mem. at 7.

[8]     *See id.*

[9]     *See id.* at 10.  In October 2011, Judge Glenn entered an order establishing November 21, 2011 as the deadline for filing claims relating to administrative expenses.  *See* Appellees' Mem. at 6.  The order stated that it did not extend the time for gift card holders to file claims and that any claim not filed by the Bar Date "'has already been deemed disallowed and any claimant holding such a claim is forever barred and estopped from asserting such a claim[.]'" *Id.* (quoting Bankr. Dkt. No. 1927).  No appeal was taken from this order.

3

unsuccessful.[10]  Borders then sought and received approval to sell its stores and intellectual property assets.[11]  "As of September 27, 2011, all e-commerce transactions on the Debtors' website ceased, including the processing and honoring of gift-cards."[12]

On November 10, 2011, Borders filed a disclosure statement pursuant to section 1125 of the Bankruptcy Code.[13]  Judge Glenn approved the disclosure statement, the means of soliciting votes on the Plan, and the form of notice of the hearing on confirmation.[14]  The Plan was confirmed on December 21, 2011, and became effective on January 12, 2012.[15]  Appellants did not object to the Plan before it was confirmed.  Following confirmation, they neither sought reconsideration, pursued stay relief, nor appealed from the confirmation order.

Just prior to the effective date, Beeman and Freij sought leave to file

---

[10]     *See id.* at 7.

[11]     *See BGI, Inc. I*, 476 B.R. at 816.

[12]     *Id.*

[13]     *See* Appellants' Mem. at 7.

[14]     *See BGI, Inc. III*, 2013 U.S. Dist. LEXIS 77740, at *11.  Among other things, notice of the confirmation hearing was published in the New York Times. *See id.*

[15]     *See* Appellees' Mem. at 7.

untimely proofs of claim based on the amounts remaining on their gift cards.[16]

Appellants also moved to certify a class of gift card holders.[17]  In February 2012,

Traktman filed an untimely proof of claim relating to his gift card.[18]  Judge Glenn

denied both motions,[19] and later sustained the Trust's objection to Traktman's

untimely claim and disallowed it.[20]  Appeals from these orders were assigned to

Judge Carter.

---

[16]     *See id.* (noting that although the motion was filed on January 4, 2012, Beeman and Freij did not file their proofs of claim until a month later).

[17]     *See id.*

[18]     *See id.*

[19]     Judge Glenn first found that all gift card holders were unknown creditors, and thus not entitled to actual notice of the bar date.  *See BGI, Inc. I*, 476 B.R. at 820-23.  He then held that publication of the bar date in the New York Times was reasonable and adequate to satisfy due process requirements of notice to unknown creditors.  *See id.* at 823-24 (citing Fed. R. Bankr. P. 2002(*l*) ("The court may order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995); *In re XO Commc'ns, Inc.*, 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003)).  Judge Glenn further held that Appellants' failure to file timely proofs of claim was not the result of excusable neglect, finding that the Plan had been substantially consummated and that "allowing [Beeman and Freij] to file late claims and certifying a class of Gift Card holders would have a disastrous effect on the remainder of the Debtors' estates and the final distributions of the Plan."  *Id.* at 825.  Judge Glenn denied the class certification motion as moot, reasoning that Beeman and Freij could not serve as class representatives because they did not hold valid claims.  *See id.* at 826-27.

[20]     *See* Appellees' Mem. at 7-8.

In September 2012, the Trust sought authorization to make interim distributions pursuant to the Plan of up to $75 million to holders of allowed general unsecured claims (the "First Distribution Motion").[21]  Appellants filed an objection and separately moved to stay all interim distributions pending resolution of their then-pending appeals.[22]  On November 5, 2012, Judge Glenn entered orders granting the Trustee's motion (the "First Distribution Order") and denying stay relief.[23]

Judge Glenn held that Appellants' request for a stay was more akin to a collateral attack on a confirmed, substantially consummated plan, which is prohibited by sections 1127(b) and 1144 of title 11 of the United States Code.[24]  He reasoned that:

---

[21]     *See id.* at 8.

[22]     *See id.*

[23]     *See id.*

[24]     *See In re BGI, Inc. f/k/a Borders Group Inc.*, No. 11-10614, 2012 WL 5392208, at *3-4 (Bankr. S.D.N.Y. Nov. 2, 2012) ("*BGI, Inc. II*").  Under section 1141(a), "[a]n order of confirmation [ ] binds the debtor and its creditors whether or not they have accepted the confirmed plan.  Thus, it has preclusive effect." *Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036, 1044 (2d Cir. 1996).  Section 1127(b) provides that a confirmed chapter 11 plan may only be modified by the plan proponent or reorganized debtor, and only before the plan has been "substantially consummated."  11 U.S.C. § 1127(b).

> Granting the requested relief would necessarily interfere with the Liquidating Trustee's ability to carry out the provisions of the Plan requiring it to make scheduled interim distributions, and the Claimants' ultimate goal – allowing a class of gift-card holders to file untimely proofs of claims – would result in a substantial redistribution of estate assets long after confirmation of the Plan. The Court therefore considers the Gift-Card Claimants' Motion to be an action to revoke the confirmed chapter 11 Plan.[25]

In addition, Judge Glenn found that Appellants did not meet the standard for a stay pending appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure ("Rule 8005").[26]   Although Appellants did not appeal from the First Distribution Order, they filed a motion asking Judge Carter to stay further distributions.[27]

While the appeals were still pending, the Trust sought authorization for a second interim distribution of an additional $25 million (the "Second Distribution Motion").[28]  Appellants filed an objection, arguing that Judge Glenn should delay ruling on the motion to ensure that sufficient funds remained in the Trust to satisfy gift card claims in the event that Judge Carter reversed the prior

---

[25]   *BGI, Inc. II*, 2012 WL 5392208, at *4.

[26]   *See id.* at *5-6.

[27]   *See* Appellees' Mem. at 8.

[28]   *See id.*

orders.[29]  Appellants did not separately move for a stay.

Judge Glenn held a hearing on May 22, 2013, and deferred ruling on the motion based on the parties' assertions that Judge Carter was likely to decide the appeals in a matter of weeks.[30]  That same day, Judge Carter issued his decision dismissing the appeals as equitably moot.[31]

On May 23, 2013, Judge Glenn entered the Second Distribution Order.  Appellants filed a timely appeal, which was assigned to this Court on August 16, 2013.  On August 19, 2013, Appellees filed a letter indicating that they intended to make a motion seeking to have this appeal assigned to Judge Carter. On August 28, 2013, Appellants responded that transferring the case to Judge Carter was not warranted because the appeals were no longer before him.[32]  They argued that instead of assigning the appeal to Judge Carter, I should either certify a direct appeal pursuant to section 158(d)(2) or, over their objection, dismiss the

---

[29]     *See generally* Appellants' Objection to the Motion of the BGI Creditors' Liquidating Trust and Liquidating Trustee for an Order Authorizing a Second Distribution to Holders of Allowed General Unsecured Claims ("Second Distribution Objection") (Bankr. Dkt. No. 3341).

[30]     *See* Second Distribution Order, Ex. 2 to Appellants' Mem., at 2.

[31]     Judge Carter did not reach the merits of Appellants' request for a stay.

[32]     *See* 8/28/13 Letter from Clinton A. Krislov, Counsel for Appellants, at 1.

appeal as equitably moot.[33]

Following a hearing, Appellants filed their motion for direct certification.  In addition, Appellants request a stay of "further distributions until the matter can be ruled on by the Court of Appeals."[34]  They characterize this appeal as presenting a single issue, "[w]hether the second and subsequent interim Liquidation distributions to [ ] general [unsecured] creditors should be approved or stayed during the pendency of the" appeals before the Second Circuit.[35]

By September 30, 2013, the Trust had distributed $91 million out of the $100 million authorized under the two interim distribution orders, including roughly $86 million to 1,700 holders of unsecured claims.[36]  As of the same date, the Trust held an aggregate cash balance of approximately $22.9 million.[37]

---

[33]    *See id.* at 2.

[34]    Appellants' Mem. at 1.

[35]    Gift Card Claimants-Appellants' Reply Memorandum in Support of Certification Under 28 U.S.C. § 158(d)(2)(A) for Direct Appeal to Court of Appeals and Stay of Interim Distributions Pending Resolution ("Appellants' Reply"), at 1.

[36]    *See* Appellees' Mem. at 9.

[37]    *See* Declaration of Kate Matson, director at BDO Consulting, a financial advisor to the Trust, in Support of Appellees' Brief in Opposition to (I) Certification of Direct Appeal Pursuant to 28 U.S.C. § 158(d) and (II) Appellants' Motion for a Stay of Interim Distributions Pending Appeal ("Matson Decl.") ¶ 6.

## III.   LEGAL STANDARD

### A.   Section 158(d)(2)

Under section 158(d)(2), the court of appeals has jurisdiction over appeals from final and interlocutory bankruptcy court orders[38] in certain circumstances.  *First*, there must be a certification that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision . . . or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case.[39]

*Second*, the court of appeals must authorize the direct appeal.[40]

Certification may be made by the bankruptcy court or the district court[41] on its own motion or at the request of a party.[42]  The court "shall" issue a

---

[38]   *See* 28 U.S.C. § 158(d)(2) (stating that the courts of appeal have jurisdiction over the types of appeals described in subsection (a)) *and id.* § 158(a) (stating that district courts have jurisdiction over final orders and, with leave of court, interlocutory orders).

[39]   28 U.S.C. § 158(d)(2)(A).

[40]   *See id.*

[41]   *See* Fed. R. Bankr. P. 8001(f)(2) ("A matter is pending in a bankruptcy court until the docketing, in accordance with Rule 8007(b), of [the] appeal" and "[o]nly a bankruptcy court may make a certification on request or on its own initiative while the matter is pending in the bankruptcy court") *and* Fed. R. Bankr. P. 8001(f)(3)(A) ("A request for certification shall be filed, within the time specified by 28 U.S.C. § 158(d)(2), with the clerk of the court in which the matter

certification if it determines that one of the three conditions in section 158(d)(2)(A) exists.[43]   However, any "request" for certification must "be made not later than 60 days after the entry of the judgment, order, or decree."[44]

> After a certification is made, the court of appeals may "in its discretion exercise, or decline to exercise, [ ] jurisdiction."[45]   As explained by the Second Circuit, "[t]he focus of the statute is explicit: on appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation."[46]

---

is pending.").

[42]   *See* 28 U.S.C. § 158(d)(2)(A).  Alternatively, an appeal from a bankruptcy court's order can be certified by all of the appellants and appellees, without the involvement of the bankruptcy court or the district court.  *See id.*

[43]   *Id.* § 158(d)(2)(B).

[44]   *Id.* § 158(d)(2)(E).  Section 158(d)(2)(E) governs certifications made under subparagraph (B).  Thus, the time limit does not apply to certifications made by all of the parties under subparagraph (A).  In addition, section 158(d)(2)(E) refers to *requests* under subparagraph B, and therefore does not by its terms apply to sua sponte certifications made by a bankruptcy judge or the district court.  I am unaware, however, of any court in this Circuit that has addressed this precise issue.

[45]   *Weber v. United States Tr.*, 484 F.3d 154, 157 (2d Cir. 2007).

[46]   *Id.* at 158.

### B.    Stay Pending Appeal

Rule 8005 governs the procedure for seeking a stay pending an appeal to the district court of a bankruptcy judge's order.  The rule states that a motion for a stay "must ordinarily be presented to the bankruptcy judge in the first instance."[47] When a request for a stay is not made to the bankruptcy judge, the moving party's "motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge."[48]

As explained in a leading treatise:

> One of two reasons might explain why the relief was not obtained in the first instance from the bankruptcy judge.  The first is that the motion for a stay was denied.  In that case, it is the burden of the appellant to convince the district court or appellate panel that the bankruptcy judge was incorrect. . . .
>         The second reason . . . would be that it was not practicable to seek relief from the bankruptcy court. . . .  It would seem that a showing of impracticability would normally require a showing that the bankruptcy judge is unavailable, or that, to be effective, relief must be immediate, and that based upon what occurred in the bankruptcy court, relief from it is improbable.[49]

"If the party improperly bypasses the bankruptcy court and seeks a stay first from

---

[47]    Fed. R. Bankr. P. 8005.

[48]    *Id.*

[49]    10 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 8005.11, at 10-8005 (16th ed. 2013) (quotation marks and brackets omitted).

12

the district court, the district court lacks the jurisdiction to hear the matter."[50]

Thus, district courts routinely dismiss motions for a stay pending appeal when stay relief is not first sought from the bankruptcy judge and the failure to do so is not adequately explained.[51]

      Rule 8005 does not articulate the standard for granting a stay pending an appeal. Courts within the Second Circuit have followed the same standard used for stays of district court orders pending appeals to the circuit court under Federal Rule of Appellate Procedure 8(a)(1)(A), in large part because Rule 8005 is directly adapted from Rule 8A.[52]

---

[50]    *In re Taub*, 470 B.R. 273, 276 (E.D.N.Y. 2012).

[51]    *See In re Alexander*, 248 B.R. 478, 483 (S.D.N.Y. 2000) ("District courts and bankruptcy appellate panels have regularly dismissed appeals for unexplained failure to apply first to the bankruptcy court."); *Zahn Farms v. Key Bank (In re Zahn Farms)*, 206 B.R. 643, 644-45 (B.A.P. 2d Cir. 1997) ("We are of the view that we may not consider the merits of the request for a stay pending appeal, because by their own admission, the Debtors have not complied with the duty imposed by FRBP 8005 to present the request for stay first to the bankruptcy judge from whose order the appeal is taken. Although that provision states that that is the "ordinary" procedure, and therefore permits exceptions, we do not believe that any exception applies here."). *Accord In re 347 Linden LLC*, No. 11 Civ. 1990, 2011 WL 2413526, at *5 (E.D.N.Y. June 8, 2011) ("[A]lthough debtor points out that several courts have acknowledged the possibility that there may exist certain exceptions to Rule 8005, debtor has not presented a single case in which a district court found that such an exception existed and excused a debtor's failure to first apply for a motion to stay in bankruptcy court.").

[52]    *See In re Turner*, 207 B.R. 373, 375-76 (B.A.P. 2d Cir. 1997) (citing Fed. R. Bankr. P. 8005 Advisory Committee Note (1983) *and In re Country Squire*

The decision as to whether to issue a stay of an order pending appeal lies within the sound discretion of the district court.[53]  "[F]our factors are considered" in exercising that discretion: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected."[54]

"[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed."[55] Thus, "[t]he lack of any one factor is not dispositive to the success of the motion,

_____

*Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996)).

[53]     *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (citing cases).

[54]     *Hirschfeld v. Board of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (quotation marks omitted). *Accord Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[55]     *Adelphia Commnc'ns Corp.*, 361 B.R. at 347 (citing *Mohammed*, 309 F.2d at 101 (citing *Ofosu v. McElroy*, 98 F.3d 694, 703 (2d Cir. 1996) ("weighing the four factors relevant to the grant of a stay")); *Hirschfeld*, 984 F.2d at 39 (finding that "consideration of these [four] factors clearly would *weigh* against the granting of the requested stay" (emphasis added)). *But see Ligon v. City of New York*, — Fed. App'x —, 2013 WL 5835441, at *1 (2d Cir. Oct. 31, 2013) (no discussion of any of the four factors and explicitly declining to make any finding regarding the merits of the appeal – i.e., the likelihood of success on the merits).

rather the inquiry represents a balancing of the four factors."[56]

### 1.   Irreparable Harm

"A showing of probable irreparable harm is the principal prerequisite for the issuance of a [Rule 8005] stay."[57]  Irreparable harm must be "neither remote nor speculative, but actual and imminent."[58]  "[I]njuries fully remedied by monetary damages do not constitute irreparable harm."[59]

"There is a division of authority as to whether the risk that an appeal may become moot in the absence of a stay pending appeal constitutes threatened irreparable injury."[60]  "A majority of courts have held that a risk of mootness,

---

[56]    *Rally Auto Group, Inc. v. General Motors LLC (In re Motors Liquidation Co.)*, No. M–47, 2010 WL 4449425, at *3 (S.D.N.Y. Oct. 29, 2010) ("The moving party, however, must show satisfactory evidence on all four criteria.").

[57]    *Rothenberg v. Ralph D. Kaiser Co.*, 200 B.R. 461, 463 (D.D.C. 1996) (quotation marks omitted).  *Accord Stern v. Bambu Sales, Inc.*, 201 B.R. 44, 46 (E.D.N.Y. 1996) (denying stay pending appeal where movant failed to show irreparable harm).

[58]    *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (quotation marks and citation omitted).

[59]    *Borey v. National Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991).

[60]    *In re DBSD North America, Inc.*, Nos. 09 Civ. 10156, 09 Civ. 10372, 09 Civ. 10373, 2010 WL 1838630, at *1 (S.D.N.Y. May 10, 2010).

standing alone, does not constitute irreparable harm."[61]  "However, several courts,

including ones within this Circuit, have held to the contrary."[62]  In my view,

"where the denial of a stay pending appeal risks mooting *any* appeal of *significant*

claims of error, the irreparable harm requirement is satisfied."[63]  But "the

seriousness of that threat is inextricably related to the appellants' likelihood of

success on the merits."[64]

> Thus, the irreparable harm factor requires consideration of the

doctrine of equitable mootness.  The Second Circuit has held that "when, during

the pendency of an appeal, events occur that would prevent the appellate court

from fashioning effective relief, the appeal should be dismissed as moot."[65]

---

[61]     *Id.* (citing cases).

[62]     *Id.* (citing cases).

[63]     *Adelphia*, 361 B.R. at 348 (emphasis in original).

[64]     *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 309 n. 46 (S.D.N.Y. 2010).

[65]     *Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.)*, 988 F.2d 322, 325 (2d Cir. 1993) ("*Chateaugay I*").  *Accord Alsohaibi v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, Nos. 13 Civ. 5755, 13 Civ. 5756, 2014 WL 46552, at \*5 (S.D.N.Y. Jan. 6, 2014) (noting that the doctrine of equitable mootness "'requires the district court to carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief'") (quoting $R^2$ *Invs., LDC v. Charter Commc'ns (In re Charter Commc'ns, Inc.)*, 691 F.3d 476, 481 (2d Cir. 2012)).

16

Equitable mootness "has been applied in two situations" in this Circuit: "'when an unstayed order has resulted in a comprehensive change in circumstances, and when a [chapter 11 plan has been] substantially consummated.'"[66]

The Second Circuit has identified five factors (the "*Chateaugay* factors") to be applied when determining whether to dismiss an appeal of a bankruptcy court order as equitably moot:

> (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.[67]

Courts in this Circuit have emphasized the importance of obtaining a stay from an

---

[66]     *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 80 (S.D.N.Y. 2010) (quoting *Kenton County Bondholders Committee v. Delta Air Lines, Inc. ( In re Delta Air Lines, Inc.)*, 374 B.R. 516, 522 (S.D.N.Y. 2007)) (quotations omitted).

[67]     *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 952–53 (2d Cir. 1993) ("*Chateaugay II*") (citations and quotations omitted).

order confirming a plan.  As explained by the Second Circuit, "[i]n the absence of any request for a stay, the question is not solely whether we *can* provide relief without unraveling the Plan, but also whether we *should* provide such relief in light of fairness concerns."[68]

### 2.     Harm to Non-Moving Party

In addition to showing irreparable harm, the party seeking a stay must establish that the non-moving party or other parties will not suffer substantial harm if the stay is granted.[69]  In other words, the moving party must show that the balance of harms tips in favor of granting the stay.[70]

### 3.     Degree of Showing on the Merits

"'The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors.'"[71]  The requisite showing of "substantial possibility" of success is "'inversely proportional to the

---

[68]     *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 145 (2d Cir. 2005) (emphasis in original).

[69]     *See, e.g.*, *Mohammed*, 309 F.3d at 100.

[70]     *See, e.g.*, *id.*; *Bermudez v. Reid*, 720 F.2d 748, 750 (2d Cir. 1983).

[71]     *Mohammed*, 309 F.3d at 101 (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).

amount of irreparable injury plaintiff[] will suffer absent the stay.'"[72]  "[T]he movant need not always show a 'probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay."[73]

### 4.      Public Interest

The "public interest favors the expedient administration of the bankruptcy proceedings."[74]  Indeed, compromises are favored in bankruptcy precisely for the reason that they "minimize litigation and expedite the administration of a bankruptcy estate."[75]

## V.      DISCUSSION

### A.      Direct Appeal Under Section 158(d)(2)

A party's request for certification must "be made not later than 60 days

---

[72]      *Id.* (quoting *Michigan Coalition of Radioactive Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

[73]      *LaRouche v. Kezer*, 20 F.3d 68, 72-73 (2d Cir. 1994) (quotation marks omitted).

[74]      *In re Savage & Assocs, P.C.*, No. 05 Civ. 2072, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005).

[75]      *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

after the entry of the judgment, order, or decree" appealed from.[76]  Judge Glenn

entered the Second Distribution Order on May 23, 2013, and thus the last date to

request certification was July 22, 2013.  Because the appeal was not docketed in this

Court until August 16, 2013, any timely request must have been presented to Judge

Glenn.[77]  However, Appellants first raised certification on August 29, 2013.

Accordingly, Appellants' request for certification is time-barred.

There are also no grounds to issue a certification.  Appellants argue

that the most likely basis for certification is section 158(d)(2)(A)(iii), which

provides for certification when immediate appeal to the circuit would "materially

advance the progress of the case or proceeding [before the bankruptcy judge.]"[78]  In

essence, Appellants contend that consolidation of their pending appeals would be

more efficient than proceeding on separate tracks, particularly when the outcome of

the appeals before the Second Circuit will impact resolution of this appeal.[79]

But efficiency alone is not a proper reason for certification.  Borders'

---

[76]     28 U.S.C. § 158(d)(2)(E).

[77]     *See* Fed. R. Bankr. P. 8001(f)(2).

[78]     *See* Appellants' Reply at 2-3.

[79]     *See id.* at 5.

assets have been sold, the Plan has been confirmed and substantially consummated, and the Trustee is not stayed from continuing his efforts to pursue claims and make distributions under the Plan.  Thus, certification of this appeal in no way advances the progress of the bankruptcy case.

### B.    Stay Pending Appeal

Appellants argue that their objection to the Second Distribution Motion satisfies Rule 8005's requirement that a request for a stay must ordinarily be made to the bankruptcy judge in the first instance.[80]  According to Appellants, their objection was a request for a stay of "further distributions until the merits are resolved" which is "precisely what [is] at issue" here.[81]

Contrary to Appellants' assertions, the relief sought here was not sought in their objection to the Second Distribution Motion.  Appellants asked Judge Glenn to "delay" his decision on the Second Distribution Motion pending the outcome of the appeals before Judge Carter.[82]  This request was based on (1) the

---

[80]    *See id.* at 9.

[81]    *Id.*

[82]    *See* Second Distribution Order at 1-2 ("The essence of the Gift Card Claimants' objection is that their appeals from two prior decisions of this Court are pending in the district court and, therefore, this Court should *delay any decision on the pending Motion* to assure that sufficient funds remain in the Liquidating Trust

procedural posture of the appeals before Judge Carter and (2) the timing of the Second Distribution Motion.[83]  Thus, they argued that "[a]ny further Interim Distribution *at this time* is unnecessary . . . , and would serve only to further deplete Trust assets *on the eve of a decision on the merits* in the Gift Card Holders' appeal *now pending*" before Judge Carter.[84]  In response, Judge Glenn indicated he would delay ruling on the Second Distribution Motion for a limited time in deference to Judge Carter.

To the extent that the Second Distribution Objection was a request for a stay at all, it was a request for a stay in connection with the Second Distribution Motion – not all future distributions.  This factor alone makes the requests different and therefore Appellants were required to first seek the relief from Judge Glenn or explain their reason for not doing so.[85]  In addition, their request to Judge Glenn

---

to satisfy [their] claims . . . in the event that the district court reverses the prior decisions") (emphasis added).

[83]   *See generally* Second Distribution Objection.  Appellants argued that distributions under the Plan only needed to be made once a year, and therefore there was no need to make distributions in May 2013.  *See id.* ¶ 1.

[84]   *Id.* (emphasis added).

[85]   *See, e.g.*, *In re MSR Resort Golf Course LLC*, No. 13 Misc. 0069, 2013 WL 766166, at *1 (S.D.N.Y. Feb. 26, 2013) (holding that appellants failed to comply with Rule 8005 where they had sought a general stay in the bankruptcy

related to an appeal before Judge Carter, not to appeals before the Second Circuit following the dismissal of Appellants' appeals as equitably moot.  It was made at a time when distributions were apparently not required under the Plan, and, notably, before the bulk of such distributions had been made.

"When considering motions to stay pending appeal under Rule 8005, [a district's court's] role is comparable to that of the court of appeals under Rule 8 of the Federal Rules of Appellate Procedure."[86]  The Appellants, "[h]aving elected not to present" their request for a blanket stay of distributions to Judge Glenn, "have denied this [Court] the benefit of the views of the Judge who is familiar with the issues pertaining to any purported emergency."[87]

To be sure, Judge Glenn's November 2012 decision denying Appellants' motion for a stay strongly suggests how he would rule in response to a second motion.[88]  But this Court should not be denied the benefit of Judge Glenn's

---

court and only a limited stay in the district court).

[86]     *Id.* at *2.

[87]     *Zahn Farms*, 206 B.R. at 645.

[88]     Appellants' position might be that they satisfy Rule 8005 because they already sought a stay from Judge Glenn by virtue of their first motion for a stay, which was "incorporated by reference" into the Second Distribution Objection. *See* Second Distribution Objection at 3.  However, even under that argument

analysis relating to such changed circumstances as the timing of the request, the amount of funds distributed, and the extent to which the claims of unsecured creditors have been satisfied.[89]

Accordingly, Appellants' request for a stay of all future distributions does not comply with Rule 8005 and must be denied on that basis alone. Furthermore, Appellants have failed to show they are entitled to a stay on the merits. In particular, Appellants have not established irreparable harm or a substantial possibility of success on the merits.[90]

### 1.    Lack of Irreparable Harm to Appellants

Appellants argue that the potential class of gift card holders will be

---

Appellants would not have complied with Rule 8005, because they did not address Judge Glenn's holding that their attempt to secure stay relief was an impermissible collateral attack on a confirmed plan.

[89]    *See, e.g.*, *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981) (explaining that a "[trial] court should have the opportunity to rule [in the first instance] on the reasons and evidence presented in support of a stay").

[90]    In what follows, I will treat the request for a stay as it is presented by Appellants – a request for a stay of all distributions pending disposition of the appeals before the Second Circuit – and not a request for a stay pending a ruling on the present appeal, which concerns the Second Distribution Order. I note, however, that a stay of distributions under the Second Distribution Order is not supported by this record. In particular, Appellants have not demonstrated irreparable harm because their lack of diligence has permitted the majority of the funds to be distributed under the Second Distribution Order.

irreparably harmed if a stay is not issued because the estate may no longer have

sufficient funds to pay their claims, which would render their appeals equitably

moot.[91]   Appellees argue that because Appellants do not represent a class of gift

card holders there is no risk of irreparable harm because the Trust will have

sufficient funds available to satisfy Appellants' individual claims.[92]   I find that even

if viewed as a class, Appellants have not made a showing that they will be

irreparably harmed in the absence of a stay.

Appellants did not object to the Plan or challenge it after confirmation.

As noted by Judge Carter, Appellants' counsel indicated that he was retained on

December 29, 2011.[93]   "[Counsel] was apparently first contacted by Appellants on

or around December 5, 2011."[94]   "After he initially spoke to Appellants, Counsel [ ]

---

[91]      *See* Appellants' Mem. at 16-17.

[92]      *See* Appellees' Mem. at 18.

[93]      *See BGI, Inc. III*, 2013 U.S. Dist. LEXIS 77740, at *11.

[94]      *Id*.  As discussed by Judge Carter, counsel's explanation for why
Appellants did not object to the Plan is less than convincing:

> When asked why Appellants did not challenge the Distribution
> Plan prior to or shortly after its confirmation, Attorney Krislov
> stated, "I'm not a bankruptcy counsel.  We contacted the Perkins
> Coie firm and . . . we did get on file with our motion [for leave to
> file late proofs of claim] before the effective date [of the

immediately began analyzing the bankruptcy docket . . . , and . . . learned that the Plan had been submitted for vote."[95]

The Plan was substantially consummated before Appellants first sought a stay of distributions.[96]  After Judge Glenn denied the motions to file untimely proofs of claim and for class certification on August 14, 2012, Appellants appealed from those orders but did not seek a stay.  Their first request for a stay was on October 11, 2012, in response to the First Distribution Motion.

Judge Glenn denied stay relief on November 2, 2012.  On November 13, 2012, Appellants requested a stay in the District Court.  But they did not request consideration of their motion on an expedited basis, and waited until January 7, 2013 to make a motion for expedited oral argument.[97]  Appellants then waited over

---

Distribution Plan].  So that Mr. Buechler's clients and Court was [sic] aware of our existence at the time . . . We did not move to enjoin them [Appellees] at that point."

*Id.* at *12 n.6 (alterations in the original).

[95]     *Id.* (quotation marks and citations omitted).

[96]     *See BGI, Inc. I*, 476 B.R. at 825.  In August 2012, when Judge Glenn denied Appellants' motions for leave to file late proofs of claim and class certification, the Trust had already made distributions of approximately $17 million.  *See id.*

[97]     *See BGI, Inc. III*, 2013 U.S. Dist. LEXIS 77740, at *16.

four months after entry of the Second Distribution Order to seek a stay in this Court, and even then did not seek an expedited ruling.

Appellants have failed to act with appropriate diligence throughout these proceedings. The four-month delay in seeking a stay of the Second Distribution Order alone undercuts any argument that they would suffer harm that was "actual and imminent."[98] Moreover, "[a]ny harm the[y] [] may now face is a result of their own dilatory conduct."[99]

Indeed, regardless of whether the court grants a stay to preserve available funds, the relief sought by Appellants before the Second Circuit is almost

---

[98]    *Tucker*, 888 F.2d at 975 (quotation marks and citation omitted). *Accord Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("[F]ailure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"); *Hirschfeld*, 984 F.2d at 39 ("The Board of Elections' inexcusable delay in filing the motions here at issue severely undermines the Board's argument that absent a stay irreparable harm would result.").

[99]    *In re Calpine Corp.*, No. 05 Br. 60200, 2008 WL 207841, at *5 (Bankr. S.D.N.Y. Jan. 24, 2008) (citing *Mooreforce, Inc. v. U.S. Dep't of Transp.*, 243 F. Supp. 2d 425, 435 (M.D.N.C. 2003) (rejecting claim of irreparable harm where it resulted from plaintiffs "own procrastination") *and In re Francis*, 15 B.R. 998, 1004 (Bankr. E.D.N.Y. 1981) (rejecting plaintiff's claims of irreparable harm because plaintiff found "itself in that position either by choice or neglect")).

27

certainly foreclosed under the equitable mootness doctrine.[100]  As explained by the Second Circuit, "courts presume that it will be inequitable or impractical to grant relief after substantial consummation of a plan" unless, among other things, "the entity seeking relief has *diligently pursued a stay of execution of the plan throughout the proceedings*."[101]

Finally, Appellants appear to concede that there is no imminent or actual threat of mootness based on available funds.  In a supplemental brief on the issue of equitable mootness submitted to this Court, Appellants argue that in addition to the millions of dollars held by the Trust, "[t]here are also hundreds of pending avoidance actions and potential actions against Committee members which are likely to generate millions more for creditors."[102]  Appellants conclude that "[t]he fair treatment of [a class of] Gift Card Holders as Unsecured Creditors is

---

[100]     *See Metromedia*, 416 F.3d at 144 (noting that "[a] chief" *Chateaugay* factor "is whether the appellant sought a stay of confirmation. . . . We insist that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one.").

[101]     *Aetna Cas. & Sur. Co. v. LTV Steel Co. ( In re Chateaugay Corp.)*, 94 F.3d 772, 776 (2d Cir. 1996) (emphasis added).

[102]     Appellants' Brief on Equitable Mootness at 3.  As noted above, the Trust had an aggregate cash balance of approximately $22.9 million on September 30, 2013.  *See* Matson Decl. ¶ 6.

feasible, poses no threat to any reorganization, and does not impair any innocent party."[103]

Thus, Appellants have not demonstrated that even a class of gift card holders would suffer irreparable harm if a stay of all future distribution is not issued while this appeal or the appeals before the Second Circuit are pending.

## 2.    Harm to Non-Moving Parties

The Second Distribution Order permitted a distribution that was authorized pursuant to the Plan.[104]  In his decision denying Appellants' October 2012 stay motion, Judge Glenn determined that a stay of interim distributions would cause "significant harm" to the holders of general unsecured claims "including the loss of valuable working capital for an indefinite period of time, lost opportunities to invest funds, and the risk of losing principal based on the FDIC's insurance coverage."[105]  The parties' arguments do not definitively demonstrate whether or not these considerations remain relevant or if they were factually correct in the first instance.  Accordingly, this factor neither weighs in favor of nor against

---

[103]    *Id.*

[104]    *See* Appellees' Mem. at 20.

[105]    *BGI, Inc. II*, 2012 WL 5392208, at *6.

29

granting a stay.

### 3. Appellants Have Not Demonstrated a Substantial Possibility of Success on the Merits

Appellants argue that they have a substantial possibility of success on the merits of the appeals before the Second Circuit because the denial of their late claims motion is an issue of law that is subject to de novo review.[106]  According to Appellants, they "present a legal argument based on a reasonable interpretation of Constitutional Due Process jurisprudence, and thus demonstrate a sufficient likelihood of success."[107] Appellants also argue that the doctrine of equitable mootness does not apply to chapter 11 plans of liquidation, and note that the Second Circuit has not yet ruled on this issue.[108]

I find that there is not a substantial possibility that Appellants will succeed in their ultimate objective of certifying a class of gift card holders that will receive a payout under a chapter 11 plan.  Among other things, the Second Circuit would have to reverse Judge Carter's orders dismissing all three of Appellants' prior appeals as equitably moot, and then it, or the district court on remand, would

---

[106]     *See* Appellants' Mem. at 22.

[107]     *Id.*

[108]     *See* Appellants' Reply at 8.

have to find for Appellants on the merits.

However, a district court's dismissal of a bankruptcy appeal as equitably moot is reviewed for abuse of discretion.[109]  Judge Carter's decision was based in part on Judge Glenn's unchallenged finding that the Plan had been substantially consummated.[110]  Accordingly, Judge Carter found that Appellants had the burden of establishing each of the *Chateaugay* factors.  He then determined that Appellants failed to meet their burden with respect to two factors, including the crucial consideration of whether an appellant has diligently pursued stay relief.[111]

As discussed above, Appellants' failure to act with diligence and the resulting substantial consummation of the Plan strongly support a finding of equitable mootness.  Furthermore, Appellants' dubious contention that the equitable mootness doctrine never applies to a chapter 7 liquidation has been rejected by numerous courts.[112]

---

[109]    *See Charter Commc'ns.*, 691 F.3d at 483.

[110]    *See BGI, Inc. III*, 2012 U.S. Dist. LEXIS 77740, at *21-22.

[111]    *See id.*

[112]    *See, e.g.*, *In re MF Global Holdings Ltd.*, No. 13 Civ. 3532, 2014 WL 231130, at *2 (S.D.N.Y. Jan. 22, 2014) (citing *Arcapita Bank*, 2014 WL 46552, at *6 (finding equitable mootness applies to liquidation cases) (citing cases)).

In addition, as a general matter, the abuse of discretion standard also applies to decisions denying requests to file late claims.[113]  After briefing, discovery, and a hearing, Judge Glenn found that Appellants were not "known" creditors.[114]  He then determined that the notice provided to Appellants as unknown creditors was sufficient as a matter of law.[115]  Appellants have not shown a substantial possibility that the Second Circuit will find that Judge Glenn abused his discretion in making these findings or in applying the law.

### 4.    Public Interest

Appellants argue that the public interest supports granting a stay because: (1) there are millions of gift card holders with claims exceeding $200 million and (2) the "issue of due process for such customers in large retail bankruptcies is great and has not been addressed by any court of appeals to date."[116]  They contend that "[f]undamentally, the issue is what notice is required to satisfy

---

[113]    *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 124 (2d Cir. 2005).

[114]    *See BGI, Inc. I*, 476 B.R. at 821-23.

[115]    *See id.* at 823-24.

[116]    Appellants' Mem. at 20.

due process notice to absent class members in the current digital age."[117]

Appellees argue that "[n]o public interest is implicated" as "the Trust has adequate reserves for Appellants' claims and Appellants do not represent anyone else."[118]  Appellees also state that a stay would interfere with the expedient administration of the estate under the Plan.[119]

Appellants have made a plausible showing with respect to this factor. However, the overall balance of harms does not support stay relief.  In particular, Appellants' failure to demonstrate either irreparable harm or substantial possibility of success on the merits forecloses stay relief.

## VI.   CONCLUSION

For the foregoing reasons, Appellants' motion for certification of a direct appeal to the Second Circuit and for stay relief is denied.  The Clerk of the Court is directed to close this motion (Docket # 9).

Pursuant to Bankruptcy Rule of Procedure 8009(a)(1) ("Rule 8009(a)(1)"), Appellants' opening brief was due on August 30, 2013.  Appellants

---

[117]     *Id.* at 21.

[118]     Appellees' Mem. at 22.

[119]     *See id.* at 23.

have not yet filed an appellate brief.  If Appellants wish to pursue this appeal, they must file their opening appeal brief by February 4, 2014.  Failure to submit a brief by that date will result in dismissal of this appeal pursuant to Rule 8009(a)(1). Appellees' response is due fourteen days from the filing of Appellants' brief, and Appellants' reply is due seven days from the filing of Appellees' response.  No extensions will be permitted.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 28, 2014

34

**- Appearances -**

**For Appellants:**

Clinton A. Krislov, Esq.
Kenneth T. Goldstein, Esq.
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive
Suite 1350
Chicago, Illinois 60606
(312) 606-0500

Jay Teitelbaum, Esq.
TEITELBAUM & BASKIN, LLP
1 Barker Avenue
Third Floor
White Plains, New York 10601
(914) 437-7670

**For Appellees**:

Bruce Buechler, Esq.
Bruce S. Nathan, Esq.
Andrew Behlmann, Esq.
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
17th Floor
New York, New York 10020
(212) 262-6700

35